# UNITED STATED DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKAHOMA

| | |
|---|---|
| [1] JOSEPH DOBRANSKY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. :   19-CV-246-KEW |
| [2] TORNADO ALLEY TURBO, INC., and [3] BILBY JOE WALLACE, | ) |
| Defendants | ) |

## COMPLAINT

Plaintiff, Joseph Dobransky, alleges and states as follows:

1. Plaintiff, Joseph Dobransky, resides in Texas.

2. Defendant Tornado Alley Turbo, Inc. ("TAT") is an Oklahoma corporation with its principal place of business in Ada, Oklahoma.

3. Defendant Bilby Joe Wallace (a/k/a Billy Joe Wallace) is a resident of Pontotoc County, Oklahoma.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

## FACTS COMMON TO ALL COUNTS

5. Plaintiff owns a Cessna A185F aircraft, serial number 18503671, FAA Registration N8375Q (the "Aircraft").

6. TAT was hired by Plaintiff to make repairs to the Aircraft according to a service quotation or estimate issued in July, 2018, to include repair of minor damage and performance of required inspections and maintenance work to maintain the airworthiness certification of the Aircraft.

7. To secure the cost of such repairs, inspections and maintenance, Plaintiff deposited $10,000.00 with TAT.

8. On September 4, 2018, Plaintiff delivered the Aircraft to TAT at its facility in Ada, Oklahoma, for the purpose of conducting the indicated repairs, inspections and maintenance.

9. TAT was entrusted with exclusive possession and control of the Aircraft upon its delivery to TAT for repairs, inspections and maintenance.

10. TAT employed defendant Wallace as a pilot.

11. On or about November 6, 2018, TAT contacted Plaintiff and admitted that Wallace had crashed the Aircraft while in TAT's employ.

12. TAT did not actually perform all of the services which it had been hired to perform and failed to complete parts of the required annual maintenance.

13. In particular, but without limitation, TAT's services should have, but did not, observe and correct a cracked turbocharger heat shield, a mis-wired fuel pump, and wear beyond appropriate levels on fuel flow restrictors and/or other critical fuel system parts.

14. On or about December 11, 2018, TAT consented to and did relinquish possession of the crash-damaged Aircraft to Plaintiff to enable its repair and return to service.

15. On or after March 3, 2019, more than 120 days after the last date of any work by TAT, and more than 60 days after consenting to and actually relinquishing possession of the Aircraft, TAT caused to be filed with the Federal Aviation Administration ("FAA")

a claim of a possessory mechanic's lien upon the Aircraft, ostensibly for services performed prior to the crash for which TAT claims to have not been fully paid.

16. TAT's claim includes charges for an annual aircraft inspection, ferrying fees and other services that TAT did not actually render at any time.

17. TAT did not perform any services upon the Aircraft's logbooks, but received such logbook solely for the purpose of making entries therein required by federal law to certify the work performed upon the Aircraft, without which the Aircraft may not be legally operated in the normal course.

## COUNT I: NEGLIGENCE

18. The foregoing paragraphs are incorporated herein by reference as if fully set forth.

19. TAT and Wallace owed a duty of care to Plaintiff.

20. The delivery of the Aircraft to TAT constituted a bailment thereof to TAT.

21. TAT failed to return the Aircraft undamaged.

22. TAT and Wallace failed to exercise reasonable care with regard to the Aircraft.

23. The Aircraft suffered damage as a result of Wallace's and TAT's negligent operation, storage, maintenance, or handling of the Aircraft and/or TAT's negligent supervision of its employees and negligent entrustment of the Aircraft to Wallace.

24. The cost to repair the damage to the Aircraft caused by the crash exceeds $75,000.00.

25. Plaintiff has further been damaged due to diminution in the value of the Aircraft as a result of the Aircraft having a record of a crash and extensive damage.

26. In particular, but without limitation, prior to the crash Plaintiff had a bona fide offer from a third party offering to purchase the Aircraft for $360,000.00, based on the condition in which it existed prior to the crash.

27. The buyer cancelled the purchase after learning of the nature and extent of the crash damage.

28. Even after repair, the post-crash market value of the Aircraft is substantially diminished.

29. The crash resulted in loss of use of the Aircraft for a substantial time, causing Plaintiff to incur additional damages in the form of added time and costs of alternative means of transportation.

30. After credit for partial payment of Plaintiff's damages, the Plaintiff's damages exceed $75,000.00.

31. The negligence of Wallace is imputable to TAT as Wallace's employer.

## COUNT II: GROSS NEGLIGENCE

32. The foregoing paragraphs are incorporated herein by reference as if fully set forth.

33. The crash of the Aircraft occurred under routine and normal visibility, operating and weather conditions such that the circumstances of the crash, namely, losing control such that the wing made ground contact during takeoff, would not have occurred if the pilot were exercising at least slight care in the operation of the aircraft.

34. The crash of the Aircraft resulted from gross negligence or recklessness of Wallace.

35. The gross negligence of Wallace is imputable to TAT as his employer.

36. The acts and omissions of TAT and Wallace constitute gross negligence.

**COUNT III: DECLARATORY JUDGMENT & DAMAGES – TAT'S SERVICES**

37. The foregoing paragraphs are incorporated herein by reference as if fully set forth.

38. TAT failed to complete all items of repair, inspection and maintenance for which it was hired in a good and workmanlike manner to the standards required for airworthiness.

39. TAT has made false or recklessly inaccurate logbook entries in the Aircraft's logbook, which breaches the implied covenant of good faith and fair dealing.

40. TAT has demanded payment for work or services, including, without limitation, post-repair ferrying that never occurred and substantive work that was not completed or not completed to the required level of skill and care, and for which payment was therefore not earned.

41. A substantial part of the work billed by TAT prior to the crash, including, without limitation, any airworthiness inspection services, became valueless as a result of the crash, such that demanding payment for it following TAT's negligence in damaging the aircraft would be unconscionable.

42. The actual value of salvageable work performed by TAT prior to the crash of the Aircraft is less than the amount of Plaintiff's deposit, such that this Court should determine the reasonable amount due for TAT's incomplete work and Plaintiff should be awarded a refund of the remainder of the deposit due to TAT's breach.

43. TAT's billing for services not rendered and for services not performed to the represented level of quality, skill and care constitute willful violations of the Texas and Oklahoma Deceptive Trade Practices Acts, for which Plaintiff may recover damages as provided by such laws.

### COUNT IV: WRONGFUL LIEN CLAIM / SLANDER OF TITLE

44. The foregoing paragraphs are incorporated herein by reference as if fully set forth.

45. Pursuant to Federal law and Oklahoma's applicable lien statute, TAT's lien rights were waived upon its consensual surrender of possession of the crash-damaged Aircraft to Plaintiff.

46. Pursuant to Federal law and Oklahoma's applicable lien statute, TAT's lien filing with the FAA was untimely.

47. TAT's lien claim is unenforceable as a matter of law because TAT did not timely commence an action on any lien it may have been entitled to assert.

48. TAT's wrongful lien filing constitutes a cloud impairing title and marketability of the Aircraft.

49. Plaintiff has suffered damages from TAT's wrongful and untimely lien claim.

### COUNT V: REPLEVIN OF LOGBOOK

50. The foregoing paragraphs are incorporated herein by reference as if fully set forth.

51. As owner of the Aircraft, Plaintiff is also the owner of the maintenance logbook associated with the Aircraft.

52. The Aircraft's logbook was delivered to TAT solely for the purpose of having TAT certify therein the services performed upon the Aircraft, including the dates of such services.

53. TAT's services, to the extent performed, were performed upon the Aircraft, not upon the logbook itself.

54. Pursuant to federal law, the logbook associated with the Aircraft must be updated with records of work performed in order to maintain the airworthiness certification of the Aircraft.

55. Logbook entries required by law are usually and customarily made without imposing separate charges or fees upon an aircraft's owner.

56. TAT has no legal, equitable or other right to retain the Aircraft's logbook.

57. TAT has wrongfully refused to surrender possession of the Aircraft's logbook.

58. The wrongful retention of the Aircraft's logbook damages Plaintiff by impairing the market value of the Aircraft.

59. Without the logbook being returned to Plaintiff's possession, the Aircraft cannot reasonably be returned to airworthiness status and operated in the normal course, which deprives Plaintiff of the value and use of the Aircraft and as such is causing damages to Plaintiff in addition to those heretofore alleged.

60. Plaintiff is entitled to a prompt order of replevin mandating the surrender of possession of the Aircraft's logbook to Plaintiff, along with damages for the wrongful detention thereof.

**WHEREFORE**, Plaintiff seeks judgment in his favor and against the defendants for the following relief:

a. For damages caused to the Aircraft by Defendants, including, without limitation, the cost of repairs and diminution of value, in excess of $75,000.00,

b. Punitive damages for the gross negligence committed by defendants, in such amount as a Jury may properly award,

c. For declaration of the rights Plaintiff regarding TAT's incomplete or deficient maintenance work, including return of money paid to TAT as a deposit but not earned by TAT, in an amount up to $10,000.00,

d. For a declaration that TAT's lien filing is invalid and/or unenforceable, ordering its release of record, and quieting title in the Aircraft as against any lien claim by TAT,

e. For immediate replevin of the Aircraft's logbook, and

f. For such other relief as may be properly awarded at law or in equity, including costs and attorney fees.

Respectfully submitted,

*/s/ Leif E. Swedlow*
Leif E. Swedlow, OBA #17710
**RUBENSTEIN & PITTS, PLLC**
1503 East 19th St.
Edmond, OK  73013
Telephone: (405) 340-1900
Facsimile: (405) 340-1001
lswedlow@oklawpartners.com

JURY TRIAL DEMANDED          **ATTORNEY FOR PLAINTIFF**
ATTORNEY LIEN CLAIMED